†JONES, AUDITOR, *v.* BOARD OF COMMISSIONERS.

↖ PREPARATION OF COMMISSIONERS REPORT BY AUDITOR.

A county auditor, by virtue of his office, is secretary of the board of county commissioners, and as such, may be required to perform the clerical work necessary to prepare their annual report.

†Affirmed by the Supreme Court; opinion 57 O. S., 189.

2. AUDITOR NOT ENTITLED TO COMPENSATION.

The word "secretary," as used in section 1021, of the Revised Statutes, is synonymous with the term "clerk," as used in sections 850 and 1078, and hence the auditor cannot charge or receive any compensation for making out such annual report, other than his compensation as expressed in the statute.

3. ALLOWANCE BY COMMISSIONERS IS VOID.

The statute nowhere provides compensation for such a service, and an allowance by the board of commissioners for it, is illegal and void.

4. MAY BE RECOVERED IF PAID.

Where such allowance is made and the amount allowed paid to the auditor, it may be recovered back in an action by the board of commissioners.

KING, J.

This action was commenced in the court of common pleas under the statute for presenting to the court an agreed statement of facts where a *bona fide* controversy has arisen between the parties under section 5207, Rev. Stat. It was there argued and decided by the three judges of the court of common pleas sitting in this county, and an opinion rendered by them, which is reported in the first volume of Ohio Nisi Prius Reports, at page 279, and the judgment rendered there was in favor of the county commissioners and against the auditor, and the auditor prosecutes error in this court to reverse that judgment.

The agreed statement upon which the case was submitted in the court of common pleas shows that the commissioners of this county for many years, and in the year in question were accustomed to employ, and did employ in the year 1893, the auditor of the county to prepare for them the report of their doings for the previous year. The statute on that subject is section 817, and provides :

"The county commissioners, annually, on or before the third Monday in September, shall make a detailed report in writing to the court of common pleas of the county, of their financial transactions during the year next preceding the time of making such report."

They employed the plaintiff in error to make this report for them, and in the year in question they paid him $100 for that service ; and this action is for the purpose of recovering that back, in case it may be done by the commissioners, they having made an arrangement to pay the auditor that sum, and having allowed his bill, and he having drawn, in accordance with that allowance, that amount from the treasury of the county. As I have said, this was submitted in the court of common pleas to the three judges of that court, and a short opinion was announced by one of them, and with that decision of the case, so far as the court was called upon to go, and the opinion rendered, we are entirely in accord, and I shall not repeat more than necessary, any of the suggestions made by the learned judge who delivered that opinion.

It is a principle of law, well settled in this state as well as elsewhere, that an officer of the public can receive only such compensation as the law allows. This has been repeatedly determined, and cases to that effect are before us, as in 7 O. S., 237 and 25 O. S.,13. It is argued here, with some ingenuity, I confess, that certain statutes prescribe that the auditor shall act as *secretary* of the board of commissioners, and that where that language is used the powers and duties conferred upon the auditor are different, and impliedly broader, than they would be if he were to act as *clerk*—which is the word used in certain other statutes. The nicety of that reasoning is impaired somewhat by the fact that the word "clerk" is used in the statutes relating to that officer, whether he be clerk or secre-

tary of the board of commissioners, in the chapter relating to county commissioners, to wit: Section 850, which provides that the clerk shall perform certain duties; and the word "*secretary*" is used in the chapter relating to the duties of the county auditor; and it is clear from the reading of these statutes, that the duties required of the county auditor—who in one chapter is described as a *clerk* and in the other as *secretary*, are the same, whether he fills one position or both, and they are therefore used by the legislature in this chapter as synonymous terms—describing the same officer. Section 850 provides that " the clerk shall keep a full and complete record of the proceedings of the board, and a general index thereof, in a suitable book provided for that purpose," and the section goes forward and prescribes fully and completely the duties of the clerk. It does not say who he shall be. Section 917—which is the one I have referred to—requires the county commissioners to make an annual report. In section 1021—the statutes not having provided who shall be clerk, nor how the commissioners are to get a clerk—it is provided that the auditor, by virtue of his office, shall be the *secretary* of the board of county commissioners, except as otherwise provided by law. That he shall aid them, when requested, in the performance of their duties, and shall keep an accurate record of all their proceedings; and shall carefully preserve all documents, books, records, maps and papers required to be deposited and kept in his office. So that, as I have said, this office being the same— whether you call him clerk or secretary—the question then arises whether he is entitled to any compensation in case he does the work he is required to do by law, or in case he does some that he is not? There are several sections, to which I need not refer, relating to the compensation of county auditors; and section 1078 provides:

" The fees and compensation provided for by the foregoing sections shall be in full for all services lawfully required to be done by the auditors of such counties; and it shall be unlawful for any county auditor to charge or receive any other or further fees or compensation, either as clerk of any board, or for any other services rendered by him."

Now, you cannot very well evade the statute by saying that because the legislature says he shall be secretary of the board of commissioners, that this provision of the statute does not apply, providing that he shall not receive any other fees. As before stated, it is a principle of the law regardless of the statute—that he shall receive no fees except those allowed by law; and here the statute steps in and says he shall receive no other fees for any other services performed by him as auditor, or as clerk of any board, or for any other services than those prescribed by the foregoing sections. If he may be lawfully required to make out these reports, then he is compensated for it by such compensation as an auditor gets. If he can not be required to make them out, the commissioners cannot employ any other person to make them out and charge the county for that service. But the statute, in this very chapter, prescribes that he shall aid the commissioners in the performance of such services as they may require, acting as their secretary or clerk, either one; and it would seem that they might require him to make out this report for them, and the compensation which he has received as auditor is in full of anything that he can charge or receive.

And here I would stop; but we are of opinion that another question is raised in this case; and it is a question that was not considered by the court of common pleas, and evidently was not argued there. It is insisted here that the commissioners of the county, in their official capacity,

having allowed this compensation to the auditor and directed it to be paid, and he having received his pay in accordance with such allowance of the board of commissioners, that they cannot maintain an action against him to recover back moneys so paid out by their allowance. And the court is cited to an authority in 35 O. S., 201, to which I will refer directly. By section 845, the board of county commissioners are, by statute, made capable of suing and being sued and of pleading and being impleaded, and required to " ask, demand and receive, by suit or otherwise, any real estate or interest therein, whether the same is legal or equitable, belonging to their county, or any sum or sums of money, or other property due to such county ; and the money so recovered in any case shall be by them paid into the treasury of the county, and they shall take the treasurer's receipt therefor," etc. And by section 894, it is provided that " No claims against the county shall be paid otherwise than by the allowance of the county commissioners, upon the warrant of the county auditor, except in those cases in which the amount due is fixed by law, or is authorized to be fixed by some other person or tribunal." And section 1024, provides : " The auditor shall issue warrants on the county treasurer for all moneys payable out of the treasury  .*   *   * when the proper order or voucher is presented therefor,   *   *   * but he shall not issue a warrant for the payment of any claim against the county unless the same is allowed by the county commissioner, except in cases where the amount due is fixed by law, or is allowed by some other officer or tribunal authorized by law to allow the same."

Now, it is clear that this claim, if it ever was a claim against Lucas county, was a claim not fixed by law, nor to be allowed by any other person or tribunal, and therefore, if allowed by anybody, it must have been allowed by the county commissioners, or must have been presented to them for allowance.

The case in 35 O. S., 201, which is relied upon, is the case of *Commissioners* v. *Noyes*, page 201, was an action commenced by the county commissioners to recover certain sums of money which had been paid to him under a contract made by the county commissioners with him for indexing certain records in the probate judge's office; and there was an answer made by him, setting forth very fully the manner in which he had received his money and claiming that it was under a lawful contract entered into by the board of commissioners with him that they had allowed these claims; that warrants had been drawn by the auditor in pursuance of the allowance for the payment of the work done by him for the county and which was done in pursuance of a legal contract.

To this the county replied that the said contract was illegally entered into; that the commissioners were not authorized by law to contract for such services; that the work was unnecessary, uncalled for and of no value to the county; that the contract was let without competition— without advertisement—and that therefore it was entirely void.

To this there was a demurrer; and it was upon the questions raised by the demurrer, and none others, that the case went to the supreme court. In the course of the opinion by Judge White, it was said:

"As to the second question, there is no denial in the reply of the facts averred in the answer, that the warrants were issued on the order of the commissioners, in payment for work done by the defendant on account of the county, under a contract with the commissioners. It is alleged, in the reply, that the contract was illegally entered upon, and that the commissioners were not authorized by law to contract for the services. But

of what the services consisted it is not stated, nor is there any statement of facts upon which the allegation of illegality and want of authority is founded. As the allegation stands, it is a mere averment of a legal conclusion; and, as a pleading, is of no legal effect or significance."

So that, so far as the reply was concerned, it did not raise very much of a question and we are left to the answer without any reply. The answer set up a legal contract for labor performed by Noyes, for the county, And the court further say:

"No fraud is alleged to have been practiced on the commissioners to induce them to allow the claim and to order its payment; nor is it alleged that the allowance or order was made under any mistake. Now, it certainly requires neither argument, nor the citation of authorities, to show that where work has thus been done, on account of the county, under an agreement with the commissioners, and has been accepted and paid for, that they can maintain no action, in the absence of fraud or mistake, to recover back the money thus paid."

Now, that is what the court said about that kind of a case—there being no allegation of any fraud or mistake or of any fact from which fraud or mistake could be inferred or upon which it could be predicated, therefore the commissioners were in no position to recover back money that it was alleged they had paid upon a contract legally made by them, for work performed for the county, and that is where that case stands now, and all that the decision amounts to, so far as it goes—and I take this trouble to refer to it because I know that it is a case relied upon in all cases similar to this, as authority against the proposition that money can be recovered back once having been allowed by the county commissioners—but in our judgment, this authority does not so hold, nor does it come anywhere near holding it, but there is an inference plainly apparent, that when money is paid out by fraud or mistake, it may be recovered back. Now, when is it paid by fraud or mistake? Clearly when it is illegally paid; when there is no authority of law for paying it, or authority of law for entering into a pretended contract upon which the payment is based. That makes fraud. And ignorance of the law may be often counted upon as a mistake, for money paid illegally, to recover it back, when the circumstances would warrant it.

One case occurs to me where the supreme court looked into the substance and passed by those things which were only technical, in 34 O. S., 137, where it was contended that the fees of jurors were fixed by the law and were to be certified by the clerk, and that upon that, no man—neither the auditor nor anybody else—had any supervision. Certain jurors, having a certificate of the clerk in their possession, asked the auditor for an order on the county treasurer for the money. The auditor, having in some way understood that these jurors were getting pay for seven or eight days' work that they had not performed, refused to draw the order, and a case was commenced to compel the auditor to draw it, claiming that the statute was mandatory and that the auditor had no right to refuse. But the supreme court punctured any claim of that kind very forcibly, and say:

"If the clerk (of the court) in performing this duty, acted under an erroneous view of the law, or under a mistake of fact, or purposely misstated the facts, and certified a greater number of days than they had served, or a greater amount of compensation than was due to the jurors respectively, it is clear that as to the excess in either respect, the act of the clerk was unauthorized and illegal, and such excess did not consti-

tute a valid claim in favor of the jurors against the county, and hence ought not to have been paid."

Well, if it had been paid, could it not have been recovered back? It being illegal, it never had constituted a claim against the county at all. That proposition seems very clear and plain; and that if the county commissioners undertook, by virtue of the statutory power conferred upon them by law to allow bills and allowed one that there was no authority to allow, and through such allowance a party illegally obtained money from the county treasurer, there ought to be power lodged somewhere to get that back, and it certainly is lodged in this general grant of authority to the commissioners to sue for and recover anything which may be due the county, whether it be money or whether it be real property. Any other holding by us would seem to encourage looseness in the making of contracts, and payment of so-called claims, and perhaps that kind of looseness which would amount even to a reckless allowance of illegal bills and claims, and that it ought to be understood that the commissioners, or any other officials having power to pass upon a bill, have no power to allow anything that is not a legal claim; in other words, there is no legal claim against the county to be allowed unless it has a legal basis upon which it can stand; and when it has such a basis, the commissioners can pass upon it and determine how much is due upon it, and with their discretion no court can interfere except it be a court deriving jurisdiction by the way of appeal or upon error. But, if they seek to act, having no jurisdiction, and seek to allow a claim that is illegal or invalid, then, as impliedly suggested by the decision of 35 O. S., it is money paid by either fraud or mistake, and it may be recovered back by the county commissioners; therefore, this judgment of the court of common pleas will be affirmed.

*W. H. A. Read*, Attorney for Plaintiff in Error.

*J. A. Barber, Pros. Atty.*, Attorney for Defendant in Error.